JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Venis Tisdale, pro se, appeals the municipal court's finding that he was responsible for the accident he was involved in. According to defendant's brief, his was the third car in line waiting at a stop light. When the light turned green, the first car proceeded through the intersection. The driver of the car directly in front of defendant started to drive forward but suddenly slammed on the brakes. When the car in front of him unexpectedly braked, defendant's car struck the rear of that car.
 {¶ 2} Defendant states that the driver of the car he struck gave no reasonable explanation for stopping suddenly and unexpectedly. For the first time on appeal, he claims that she should have given him a signal to warn him of her intention to stop. Because she did not give any such signal, he argues, she is liable for the accident. He believes that he was, therefore, wrongly cited by the police. He also believes that the court demonstrated prejudice against him as shown in various rulings it made during the trial. In support of these assertions, defendant states five assignments of error. The first is:
I. THE TRIAL COURT ERRED BY ACCEPTING INCONSISTENT TESTIMONY FROM THE PLAINTIFF'S [sic] AND THEIR WITNESSES IN THE CASE.[1]
 {¶ 3} Defendant argues that the court unfairly allowed inconsistent testimony from the police officer and the driver of the car he hit. First he points to the police officer's accident report in which the officer indicated that both vehicles involved in the accident incurred damage. Defendant states that this report is not consistent with the officer's testimony at trial, in which the officer stated that only one vehicle was damaged.
 {¶ 4} Defendant then quotes extensively from the Rules of Evidence concerning impeachment, Evid.R. 607 and 608. Evid.R. 607 states:
(A) Who May Impeach. — The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803.
(B) Impeachment: reasonable basis. — A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact.
Defendant's argument concerning the impact of this allegedly inconsistent testimony on his case, however, is not clear. He appears to be claiming that the trial court prejudiced his case because it did not allow him the opportunity to impeach the witness' credibility. The pertinent facts of the case, however, are not in dispute. Defendant admits in his brief that the other driver suddenly braked and he could not stop in time to avoid hitting her car. Whether his car was damaged or not is of no consequence to the outcome of the case. There are no issues of material fact to be decided; only issues of law remain to be determined. If the allegedly inconsistent testimony entailed facts which were integral to the case, impeachment would be an appropriate tool. But because defendant himself has stipulated to the actual events of the accident, any peripheral details are of no consequence.
 {¶ 5} Defendant also points to allegedly inconsistent testimony on the part of the driver of the car he hit. She testified at one point that she saw a big brown car in her rear view mirror. On cross-examination, she stated that she was not sure of the color of the car which hit her from the rear. When defendant attempted to question her further on this inconsistency, the trial court intervened, telling him that she had answered that she did not know the color of the car. Defendant interpreted the court's intervention as bias against him which prevented him from adequately presenting his case. While it is not possible for an appellate court to see the demeanor of the speaker from a written transcript, a review of the actual words on the page do not convey a personal prejudice against defendant. It is possible that the court was expressing impatience with the lack of understanding of the rules under which a trial proceeds more than with the person lacking that knowledge.
 {¶ 6} Defendant fails, however, to indicate how this court action adversely affected the outcome of the case. If the identity of the car which struck hers had been in question, the color of that car would have been very important. Because defendant had already agreed that his car was the one which struck the other driver's, however, the color of his car is inconsequential.
 {¶ 7} Because defendant has not shown that he was prejudiced by the trial court's rulings on these evidentiary issues, this assignment of error is without merit.
 {¶ 8} For his second assignment of error, defendant states: II. THE JUDGE IS PREJUDICE [sic] AGAINST THE DEFENDANT AND IS SHOWING COMPLETE FAVORITISM TO THE PLAINTIFF'S [sic] AGAINST THE DEFENDANT AND IS ACCEPTING THE COERCED TESTIMONY FROM THE PLAINTIFF'S [sic] AND IS NOT GIVING THE DEFENDANT A FAIR TRIAL. AND HAS ASKED HIM FOR HIS LICENSE AND HAS THREATENED TO SUSPEND HIS LICENSE EVEN THOUGH THE TICKET CLEARLY SHOWED THAT PROOF OF HIS INSURANCE WAS INDEED SHOWN TO THE OFFICER.
 {¶ 9} Defendant objects to the trial court's insistence on seeing his proof of insurance at trial. Defendant argues that the court's request is further proof of the trial court's bias against him, because he presented this proof to the officer and the traffic ticket indicates that he showed the officer proof of financial responsibility at the scene of the accident.
 {¶ 10} Operating a vehicle without proof of financial responsibility is illegal in the state of Ohio. R.C. 4509.101
states in pertinent part:
(A) (1) No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to that driver's operation of that vehicle.
* * *
(3) A person to whom this state has issued a certificate of registration for a motor vehicle or a license to operate a motor vehicle or who is determined to have operated any motor vehicle or permitted the operation in this state of a motor vehicle owned by the person shall be required to verify the existence of proof of financial responsibility covering the operation of the motor vehicle or the person's operation of the motor vehicle under any of the following circumstances:
(a) The person or a motor vehicle owned by the person is involved in a traffic accident that requires the filing of an accident report under section 4509.06 of the Revised Code.
* * *
 {¶ 11} Defendant is, therefore, legally required to provide proof of insurance in this circumstance.
 {¶ 12} Proof of financial responsibility can be shown in several ways:
(G) (1) The registrar, court, traffic violations bureau, or peace officer may require proof of financial responsibility to be demonstrated by use of a standard form prescribed by the registrar. If the use of a standard form is not required, aperson may demonstrate proof of financial responsibility underthis section by presenting to the traffic violations bureau,court, registrar, or peace officer any of the following documents or a copy of the documents:
(a) A financial responsibility identification card as provided in section 4509.103 [4509.10.3] of the Revised Code;
(b) A certificate of proof of financial responsibility on a form provided and approved by the registrar for the filing of an accident report required to be filed under section 4509.06 of the Revised Code;
(c) A policy of liability insurance, a declaration page of a policy of liability insurance, or liability bond, if the policy or bond complies with section 4509.20 or sections 4509.49 to4509.61 of the Revised Code;
(d) A bond or certification of the issuance of a bond as provided in section 4509.59 of the Revised Code;
(e) A certificate of deposit of money or securities as provided in section 4509.62 of the Revised Code;
(f) A certificate of self-insurance as provided in section4509.72 of the Revised Code.
(2) If a person fails to demonstrate proof of financial responsibility in a manner described in division (G)(1) of this section, the person may demonstrate proof of financial responsibility under this section by any other method that the court or the bureau, by reason of circumstances in a particular case, may consider appropriate.
R.C. 4509.101(G), emphasis added.
 {¶ 13} The court was within its authority to require defendant to provide proof that he had a policy of insurance covering the time in which the accident happened. Although defendant had his insurance card with him, the card he presented at trial reflected coverage for a period of time subsequent to the accident. It did not reflect coverage for the time period in which the accident occurred. When defendant was unable to provide documentation of that coverage, the court permitted him to contact his insurance agent and have the agent fax proof to him at the court. The agent sent proof for the time frame covering the trial, but did not provide proof covering the time frame of the accident. The court allowed defendant to again contact his insurance agent to ask again for the correct documentation to be faxed. The record does not indicate whether or not the agent eventually sent the correct information.
 {¶ 14} Nonetheless, the court was not harassing defendant for any personal or prejudicial reason; the court was fulfilling its duty to be certain that defendant had been insured at the time of the accident. Accordingly, this assignment of error is without merit.
 {¶ 15} For his third assignment of error, defendant states: III. THE JUDGE IS SHOWING UNFAIRNESS TO THE DEFENDANT AND IS ALLOWING THE PROSECUTOR TO CUT DEFENDANT OFF IN THE MIDDLE OF THE DEFENDANT GIVING TESTIMONY AND OR QUESTIONING THE WITNESS IN COURT AND THE DEFENDANT CANNOT GET A FAIR TRIAL IN THEIR COURT.
 {¶ 16} Defendant believes that the court's rulings during his examination of the witnesses and the state's cross-examination of him further show its bias against him. A review of the portions of the transcript to which he objects reveals no improper bias on the part of the court.
 {¶ 17} One exchange defendant complains of begins with the prosecutor asking defendant about what transpired after the light had turned green. The prosecutor asked "[a]nd then she started up and slammed on the brakes is your testimony?" Tr. at 21. Defendant then began to speak, but was not answering the question asked. He stated: "the first car, when the light. . . ." Id. When the prosecutor interrupted him and stated that he was not asking about the first car, defendant responded, "I know what you're asking me about, sir. Would you allow me to be able to say what I need to say?" Id. The court then interjected: "No, you need to answer his question." Id. Defendant then proceeded to describe the actions of the first car in front of the light, despite the court's instructions. The court did not intervene again; rather, it permitted defendant to repeat the entire story he already had recounted on direct examination.
 {¶ 18} "The extent to which cross-examination may be conducted is usually a matter of discretion on the part of the trial court." Carey v. State (1904), 70 Ohio St. 121, 126. See also State v. Lutz, Cuyahoga App. No. 80241, 2003-Ohio-275 ¶ 143 144 ("Because the trial court is charged with controlling the proceedings, the court properly limited what could have been endless testimony.")
 {¶ 19} Because defendant had already presented his version of the events of the accident several times, the court did not err in attempting to limit defendant's testimony on cross-examination to the specific questions asked by the prosecutor.
 {¶ 20} Defendant also complains that the court was biased when it limited his cross-examination of the driver of the car he struck. She had testified on direct that all she could remember about the kind of car which struck her was that it was "a big, brown car." Tr. at 5. On cross-examination, defendant, pro se, asked her whether she had stated that the car was brown. She replied, "[w]ell, it looked like it was brown." Tr. at 7. When he asked, "So is it or is it not a brown-colored vehicle?" she responded, "I don't know what color it was. I really didn't know what color it was, I just knew I got hit." When defendant again asked, "[b]y what color vehicle?" the prosecutor objected. The court told defendant, "[s]he's answered your question. She says she's not quite sure what color it was." Id. Defendant then argued, "[o]kay. But she testified, Judge, that it was brown." Id. The court responded, "[s]ir, I heard what she testified to. Don't argue, just ask her another question." Tr. at 7.
 {¶ 21} Defendant then proceeded with questioning about the color of the traffic light. As we said above, the court does not err in limiting repetitious testimony. Additionally, because the color of the car was immaterial to the legal question of who was responsible for the accident, defendant has failed to demonstrate any prejudice resulting from the limitation of this line of questioning.
 {¶ 22} Accordingly, this assignment of error is overruled.
 {¶ 23} For his fourth assignment of error, defendant states:
IV. THE FAILURE OF THE WITNESS TO REMEMBER AND OR RECALL WHAT TYPE OF THE COLOR [sic] THE VEHICLE WAS THAT HIT HER AND ALSO WHETHER THERE WAS A MALE OR FEMALE DRIVING IN THE VEHICLE IN FRONT OF HER. [sic] (THE EVENTS OF THE ACCIDENT AS SPECIFIC EVENTS HAD TAKEN PLACE. [sic]
 {¶ 24} This assignment consists of two grammatical fragments which fail to make an assertion. However, in the first and third assignments of error defendant previously argued the factors cited here. So we will not address them again. Accordingly, this assignment of error is overruled.
 {¶ 25} For his fifth assignment of error, defendant states: V. THE FAILURE OF THE COURT TO SITE [sic] THE WITNESS/DRIVER (OLGA IRIS WRIGHT) FOR HER FAILURE TO GIVE THE APPROPRIATE/PROPER SIGNAL TO THE DRIVER THAT IS IMMEDIATELY TO THE REAR OF HER BEFORE SLAMMING ON HER BRAKES AND CAUSING THE ACCIDENT. [sic]
 {¶ 26} In his discussion of this assignment of error, defendant insists that the driver of the car he struck was at fault in causing the accident. He believes the court's ruling that defendant was responsible is further proof of the court's bias against him. He argued extensively that when the vehicles were stopped at the light, he was an assured clear distance behind the other driver. He misconstrues the meaning of the law. R.C. 4511.21 controls the issue of assured clear distance:
(A) No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no personshall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than willpermit the person to bring it to a stop within the assured cleardistance ahead. Emphasis added.
 {¶ 27} The assured clear distance is required, therefore, at all times, not just when stopped, as defendant assumes. The Ohio Supreme Court clarified the meaning of the statute as follows:
The "assured clear distance ahead" referred to in Section4511.21, Revised Code, constantly changes as the motoristproceeds, and is measured at any moment by the distance between the motorist's car and any intermediate discernible static or forward-moving object in the street or highway ahead constituting an obstruction in the motorist's path or lane of travel. (Paragraph one of the syllabus of Erdman v. Mestrovich,155 Ohio St. 85, approved and followed.) (Emphasis added.)
Cerny v. Domer (1968), 13 Ohio St.2d 117, paragraph two of the syllabus. Defendant errs, therefore, in arguing that he did not have a duty to maintain an assured clear distance between himself and the car in front of him.
 {¶ 28} Nonetheless, defendant argues that the driver in front of him failed to signal her stop. The only law to which defendant cites us governing signaling a stop is a Lakewood City Ordinance. Defendant was not cited in Lakewood. His case was heard by the Bedford Municipal Court. Lakewood statutes have no bearing on accidents which occur on Rockside Road, as this one did.
 {¶ 29} The statute governing the signaling of a stop, R.C.4511.39 states in pertinent part:
No person shall stop or suddenly decrease the speed of a vehicle * * * without first giving an appropriate signal in the manner provided herein to the driver of any vehicle * * * immediately to the rear when there is opportunity to give a signal.
 {¶ 30} In a similar case, the Fifth Appellate District noted:
Appellants also argue that the court erred in finding that [the driver who stopped] was not negligent per se for violating R.C.4511.39:
"No person shall stop or suddenly decrease the speed of a vehicle or trackless trolley without first giving an appropriate signal in the manner provided herein to the driver of any vehicle or trackless trolley immediately to the rear when there is opportunity to give a signal."
This argument is without merit. It is undisputed that the brake lights on Finley's vehicle were working properly, and Watt saw the brake lights come on. Watt Deposition pages 18-19, 40. Appellants have cited no law which requires a driver to give a signal other than that given by Finley before stopping his vehicle.
Glass v. Watt (Mar. 8, 1994, Tuscarawas App. Nos. 93AP080057, 93AP080058, 1994 Ohio App. LEXIS 953, *5.
 {¶ 31} The signal referenced by the statute requiring a driver to alert a vehicle behind that the vehicle is stopping, is the brake light. As stated in R.C. 4513.071,
"[e]very motor vehicle * * * when operated upon a highway shall be equipped with two or more stop lights * * *. Stop lights shall be mounted on the rear of the vehicle, actuated upon application of the service brake, and may be incorporated with other rear lights. Such stop lights when actuated shall emit a red light visible from a distance of five hundred feet to the rear * * *.
Such stop lights when actuated shall give a steady warning light to the rear of a vehicle or train of vehicles to indicate the intention of the operator to diminish the speed of or stop a vehicle or train of vehicles.
In the case at bar, defendant never alleged that the other driver's brake lights failed or proffered any such evidence. Rather, he claims that she did not give an appropriate signal before she stopped. More importantly, he never raised this argument at trial. This is a new argument which he cannot raise on appeal; "Appellant cannot now be heard to complain about this when she could have brought this to the attention of the court at a time when the court could have considered the issue." Slone v.Slone (Sept. 2, 1992), Wayne App. No. 2717, 1992 Ohio App. LEXIS 4526, at *2.
 {¶ 32} Because the record contains no evidence that the other driver's brake lights were not functioning, and because defendant did not raise this argument in the trial court, defendant has failed to prove that she did not properly signal her stop. His minor misdemeanor conviction for failing to maintain an assured clear distance was properly imposed. Accordingly this assignment of error lacks merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and George, J.,* concur.
[1] Defendant includes text in both lower case and upper case letters, as well as some bold faced words. For clarity, we eliminate the irregular format of his assignments of error and quote it in total capital letters.
* SITTING BY ASSIGNMENT: JUDGE JOYCE J. GEORGE, RETIRED, OF THE NINTH DISTRICT COURT OF APPEALS.) 2(A)(1).